UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHANTEL PARRIA-SMITH                                         CIVIL ACTION

VERSUS                                                                   NO. 19-7844

PRIMERICA LIFE INSURANCE CO., ET AL.               SECTION A (3)

### ORDER AND REASONS

The following motions are before the Court: **Motion for Partial Summary Judgment (Rec. Doc. 126)** filed by Metropolitan Life Insurance Co. ("MetLife"); **Motion to Continue and/or Dismiss MetLife's Motion for Partial Summary Judgment (Rec. Doc. 138)** filed by the plaintiff, Shantel Parria-Smith. Both motions are opposed. The motions, submitted for consideration on March 15, 2023, are before the Court on the briefs without oral argument.

**I.    Background**

This case involves two life insurance policies, one of which may be subject to a suicide exclusion, coverage for accidental death and dismemberment benefits, for which coverage may not apply if the decedent died by suicide, and competing claims by the primary and contingent beneficiaries.

On June 24, 2018, Mr. Troy Smith died by a gunshot wound to his head. The plaintiff herein, Ms. Shantel Parria-Smith ("Shantel"), the decedent's wife, filed this lawsuit seeking life insurance benefits from two separate policies covering her late husband. One policy was issued by Primerica Life Insurance Co. The other was issued

by MetLife. MetLife had in place a group policy (with a life insurance benefit) issued to Troy Smith's employer, the Jefferson Parish Sheriff's Office.

The Complaint mentions only life insurance and does not refer to benefits for accidental death and dismemberment. Troy Smith had coverage under the MetLife policy for accidental death and dismemberment ("ADD"), which if triggered would result in an additional $130,000.00 in proceeds. It is now clear that the plaintiff does seek to recover the ADD benefit from MetLife.

Competing claims for the insurance proceeds have been made by not only Shantel but also by Troy Smith's sons, Dominic Smith and Gabriel Smith ("the Smiths"). In addition, American Funeral Financial, LLC has made claims against all parties for payment of Troy Smith's funeral expenses. Shantel is the primary beneficiary on the insurance policies but to date the death benefits have not been paid to her. The MetLife life insurance benefit is not subject to any exclusions so MetLife has no interest in the life insurance proceeds. The life insurance benefit will be paid to either Shantel as primary beneficiary (100%) or to the Smiths as contingent beneficiaries (50% / 50%). On April 4, 2023, the Court entered an order pursuant to a consent motion to have MetLife deposit a total of $175,902.47 into the registry of the Court, that total comprising the life insurance benefit plus accrued interest. (Rec. Doc. 157, Order).

The Primerica policy was still in its contestability period when Troy Smith died. But Primerica has now concluded its contestable claim investigation and determined that the policy was properly issued. (Rec. Doc. 131-1, Reply at 2). Unlike the MetLife policy, the Primerica policy's life insurance benefit is subject to a suicide exclusion.

Primerica has not yet determined whether it will seek to deny coverage based on that exclusion.

The shooting death of Troy Smith was investigated by the Jefferson Parish Sheriff's Office Homicide Division. Shantel was arrested and charged with the second degree murder of Troy Smith. Louisiana law prohibits a beneficiary from receiving life insurance benefits when that beneficiary is adjudged either to be criminally responsible for the insured's death or to have participated in the intentional, unjustified killing of the insured. La. R.S. § 22:901(D)(1)(a), (b). This "Slayer Rule" is intended to prevent someone who kills the insured from financially benefiting from his death. *Pruco Life Ins. Co. v. Breen*, 289 F. Supp. 3d 777, 789 (E.D. La. 2017), *affirmed*, 734 Fed. Appx. 302 (Aug. 15, 2018) (unpublished).

Because of the pending state criminal charges and the potential that they would impede discovery in this case, the Court determined that the prudent course of action would be to stay this matter in its entirety pending the outcome of the state criminal case. (Rec. Doc. 53, Minute Entry 1/23/20). On January 23, 2020, the Court entered an order staying and closing this civil action pending the conclusion of the criminal case. (*Id.*).

The criminal trial lasted ten days with the State calling 32 witnesses. On August 26, 2022, a Jefferson Parish jury returned a verdict of Not Guilty. On September 16, 2022, the Court reopened this case. (Rec. Doc. 55, Order). Shantel's position is that this case is simple—whether Troy Smith died by murder, suicide, or accident—and that the uncontroverted scientific and expert evidence shows that the manner of death was

accidental. The Court has already either addressed or denied as premature several motions.

A jury trial had been set for May 22, 2023. (Rec. Doc. 59, Scheduling Order). But on March 6, 2023, the Court granted (over Shantel's objection) a motion to amend certain scheduling order deadlines. (Rec. Doc. 137, Order and Reasons). Although the Court did not disturb the trial date the Court did express concerns that the trial date may no longer be viable. The Court attempted to schedule a status conference with counsel to discuss the viability of the trial date but scheduling a conflict-free date proved difficult. The Court therefore abandoned the effort to schedule a status conference until after the parties participated in a settlement conference with the magistrate judge. (Rec. Doc. 154, Order). That settlement conference took place on March 30, 2023, but the parties were unable to reach a settlement. (Rec. Doc. 155, Minute Entry).

On April 11, 2023, the Court entered an order cancelling the pretrial conference and scheduling a status conference in lieu of the jury trial. (Rec. Doc. 159, Order). The status conference will take place on May 25, 2023, in chambers.

The instant motions pertain to Shantel's claim for statutory damages, penalties, and attorney's fees, colloquially referred to as "bad faith" claims, against MetLife. MetLife argues that Shantel has no legal basis for her bad faith claims given the criminal charges that were instituted against her, and given the Smiths' competing claims for benefits, both of which have precluded payment of any insurance benefits to Shantel. The Court has on prior occasions questioned the merits of the bad faith claims.[1]

---

[1] For example, in its February 3, 2023 Order and Reasons addressing MetLife's motion to deposit interpleader funds, the Court stated as follows:

All discovery pertaining to the bad faith claims has been stayed by the Court pending the resolution of the instant motions. (Rec. Doc. 146, Order). As the Court has previously observed, if MetLife's motion for summary judgment is granted then all discovery related to the bad-faith claims against this insurer will become irrelevant to any issue in this case. But one of Shantel's arguments in opposition to MetLife's motion for summary judgment is that she requires additional discovery from MetLife regarding claims handling in order to support her bad faith claims thereby rendering MetLife's motion premature.

**II.     Discussion**

Shantel's claims against MetLife for penalties and damages are based on La. R.S. § 22:1973 and La. R.S. § 22:1811.[2] Shantel's claims against MetLife are based on the life insurance benefit and on the ADD coverage.

Section 1973 states in relevant part:

---

> Shantel's claim for statutory damages, penalties, and attorney's fees is puzzling. Shantel was charged with second degree murder shortly after Troy Smith's death in 2018. Her criminal case was not resolved until August 2022, nearly four years later. MetLife cannot be liable for failing to pay Shantel life insurance benefits while the criminal charges were pending. This case was stayed and closed until September 16, 2022, after which third-party claims and cross claims were filed as to the insurance proceeds. Thus, even after the criminal case was resolved, the contingent beneficiaries' claims for the life insurance benefits prevented Shantel from receiving payment. In other words, as of today MetLife could not pay Shantel the benefits to the exclusion of the contingent beneficiaries even if it wanted to. Given that MetLife does not dispute that it owes interest on the $130,000.00 benefit, and given that Shantel argued in her opposition that a partial deposit was not necessary, the Court is at a loss to understand the basis for Shantel's claim for damages, penalties, and attorney's fees as to MetLife.

(Rec. Doc. 102, Order and Reasons at 6-7 n.6).

[2] The Court notes that although Shantel's complaint includes a demand for attorney's fees, none of the applicable Insurance Code statutes include an award of attorney's fees.

> An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

La. R.S. § 22:1973(A).

One such breach of the duties imposed in the subsection above is—

> Failing to pay the amount of any claim due any person insured by the contract **within sixty days** after receipt of **satisfactory proof of loss** from the claimant when such failure is arbitrary, capricious, or without probable cause.

*Id.* § 1973(B)(5) (emphasis added).

But the foregoing provisions are <u>not</u> applicable to claims made under health and <u>accident</u> insurance policies. *Id.* § 1973(D). They may apply, however, to a life insurance policy. *See Burley v. N.Y. Life Ins. Co.*, 179 So. 3d 922, 931 (La. App. 3d Cir. 2015).

Instead, § 1821 (not referenced by the plaintiff) applies to health and accident policies, and states:

> All claims for accidental death arising under the terms of health and accident contracts where such contracts insure against accidental death shall be settled by the insurer **within sixty days** of receipt of **due proof of death** and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six percent per annum from date of receipt of due proof of death by the insurer until paid.

La. R.S. § 22:1821 (B) (emphasis added).

Section 1811, specifically applicable to life policies, states that—

> All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer **within sixty days** after the date of receipt of **due proof of death**, and if the insurer fails to do so without just cause, the amount due shall bear interest at the rate of eight percent per annum from date of receipt of due proof of death by the insurer until paid.

La. R.S. § 22:1811 (emphasis added).

A plaintiff seeking to recover under any of the foregoing penalty provisions has the burden of proving that the insurer's failure to pay as dictated by the applicable statute was without just cause or arbitrary or capricious or without probable cause in failing to pay. *See McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985); *Hart v. Allstate Ins. Co.*, 437 So. 2d 823, 827–28 (La. 1983) (citing *Steadman v. Pearl Assur. Co.,* 242 La. 84, 134 So.2d 884 (1961)). The foregoing statutes are penal in nature and therefore must be strictly construed. *Katie Realty, Ltd. v. La. Citizens Prop. Ins. Corp.*, 100 So. 3d 324, 328 (La. 2012) (citing *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1020 (La. 2003)).

It is undisputed that MetLife did not pay any insurance benefits—life or ADD—to Shantel as primary beneficiary within 60 days after receipt of satisfactory proof of loss (§ 1973) or receipt of due proof of death (§§ 1811 & 1821). Although the exact date when MetLife received either of those is not clear to the Court, no one disputes that the 60 day window opened at some point (presumably in 2018) and closed again with Shantel receiving nothing to date as the five year anniversary of Troy Smith's death approaches.[3] Thus, the necessary predicate to a penalties/damages claim against MetLife is satisfied, and the analysis turns to whether Shantel has created an issue of

---

[3] MetLife's Statement of Undisputed Material Facts, (Rec. Doc. 126-3 at 4), provides several dates such as when Troy Smith died, when MetLife learned of the funeral assignment (June 29, 2018), and when MetLife learned that Shantel had been arrested and charged with Troy Smith's murder (July 12, 2018), but MetLife has not pinpointed the trigger date for the 60 day window under any statute. In its Answer/Counterclaim/Third-Party Claim for Interpleader (Rec. Doc. 12 ¶ 15), MetLife states that it did not receive the death certificate until September 28, 2018.

fact as to whether MetLife's ongoing failure to pay her has been without just cause or arbitrary or capricious or without probable cause.

The Court begins with the life insurance benefit because the MetLife life insurance benefit was not contingent on the cause of death or subject to any exclusions.

On July 11, 2018, just a little over two weeks following the death of Troy Smith, Shantel was arrested for his murder. Following the criminal investigation, the District Attorney was obviously persuaded that Shantel had killed Troy Smith, and that he could prove it, because he brought the case to a grand jury and obtained an indictment against Shantel for second-degree murder (a specific intent crime) on November 8, 2018. (Rec. Doc. 42-4, Exhibit 2, 24th JDC docket sheet). Over the next four years leading up to the trial in August 2022, the District Attorney then dedicated the resources necessary to prosecute and try a murder case, the trial of which lasted ten days with the State calling 32 witnesses, involving thousands of pages of discovery.

The criminal investigation and ultimate murder charge carried with them the very real possibility that Shantel could be convicted on the charge and thereby found to be criminally responsible for Troy Smith's death. Upon conviction (once final), Louisiana's Slayer Rule, La. R.S. § 22:901(D)(1)(a) (criminal responsibility for the death), would have by operation of law excluded Shantel from receiving the life insurance benefit and placed those benefits in the hands of the contingent beneficiaries, the Smiths.

Shantel's acquittal on August 26, 2022, foreclosed the applicability of § 901(D)(1)(a) but disqualification under the Slayer Rule is not limited to a criminal conviction. The only certainty deriving from the acquittal was that the State did not prove beyond a reasonable doubt that Shantel was guilty of second-degree murder in the

death of Troy Smith. Acquittal in the criminal justice system does not foreclose a judicial determination in accordance with § 901(D)(1)(b), which results in disqualification of a beneficiary if she is judicially determined to have participated in the intentional, unjustified killing of the individual insured, and does not require a criminal conviction. The Smiths' counterclaim against Shantel in this civil action is based on this very provision and that claim is still pending as of this writing.[4]

MetLife was not without just cause or arbitrary or capricious or without probable cause in failing to pay Shantel the life insurance benefit once she was arrested and charged with murdering the insured, which occurred almost immediately after Troy Smith's death. Even after acquittal, § 901(D)(1)(b) may lead to disqualification and the question whether the Smiths can prevail in their efforts to meet their burden of proof under that statute is still open.

Shantel cannot refute the fact that MetLife is not subject to penalties for failing to pay *her* the life insurance benefit within 60 days of due proof of death. But because the life insurance benefit was payable to *someone*, Shantel's position is that MetLife should be penalized for failing to immediately invoke a concursus proceeding and deposit the life insurance benefit into the registry of the Court.

This argument lacks merit because the Slayer Rule was and continues to be an impediment to Shantel receiving the life insurance proceeds. If the proceeds are ultimately found to be owed to Shantel, she cannot claim penalties or damages against MetLife because of the operation of the Slayer Rule, which MetLife was justified in

---

[4] Shantel has filed a motion for summary judgment against the Smiths. (Rec. Doc. 158). That motion is scheduled for submission on April 26, 2023. The Court has not yet reviewed that motion or the opposition.

relying upon to withhold payment. And if the life insurance proceeds are ultimately found to be owed to the Smiths, then Shantel would lack standing to pursue penalties or damages for an insurance benefit that is not hers. Thus, the fact that the life insurance benefit was never subject to denial does not inure to a bad faith claim for Shantel. Further, MetLife has acknowledged that interest was due on the life insurance benefit and it included that interest when it recently deposited the life insurance proceeds into the registry of the Court. Therefore, regardless of who the rightful owner of the MetLife life insurance benefit turns out to be, the interest on the benefit since the date of death has been paid and will go to the rightful owner.

      Shantel argues that MetLife violated its duty of good faith and fair dealing by not conducting its own independent investigation into Troy Smith's death, particularly during the nine months between this civil lawsuit being filed and then stayed by the Court. This argument is without merit. The criminal case was actively being prosecuted by the District Attorney at the time. How exactly MetLife was supposed to conduct its own investigation without access to the State's evidence is something that Shantel never explains. Shantel surely knows that the Sheriff's Office would not have volunteered the specifics of its investigation to MetLife while the criminal case was ongoing because the Sheriff's Office moved to quash Shantel's subpoena in the criminal case, and when Shantel attempted to subpoena the Sheriff's Office's investigative materials as part of this civil action before it was stayed, the Sheriff moved (successfully) to quash that subpoena. (Rec. Doc. 42, Motion to Quash by Sheriff Joseph Lopinto). Furthermore, MetLife correctly points out that the Slayer statute refers to either a criminal conviction

or judicial determination, not to the insurer's own independent conclusion as to the insured's cause of death.

Insofar as the ADD benefits are concerned, the case for penalties/damages is even weaker because it is not even clear that those benefits are owed. The beneficiary claiming those benefits must prove coverage according to the policy's language regarding accidental death. A conviction on the criminal charges would have relieved the insurer of paying the ADD benefit. Murder aside, Shantel acknowledges that her position during the criminal proceeding was that Troy Smith committed suicide although now she believes that it is clear that the death was not suicide but rather an accident.[5] This change of theory is not necessarily damaging to Shantel's civil case but it has certainly muddied the water. While the District Attorney failed to prove Shantel's guilt beyond a reasonable doubt, and while Shantel has pointed out the glaring lack of physical evidence as to her culpability for the death of Troy Smith, it's clear that something persuaded the District Attorney that Troy Smith's death was no accident. Even assuming that the District Attorney was wrong, MetLife was certainly not in a position to know more about the circumstances surrounding Troy Smith's gunshot wound and death than what the District Attorney knew. In short, MetLife was not without just cause or arbitrary or capricious or without probable cause in failing to pay Shantel the ADD benefits, which are not based solely on due proof of death and may not be owed to anyone depending on how the facts prove out in this case.

Finally, given the circumstances of this case, there is simply nothing that Shantel can discover from MetLife to change the outcome of this motion. Nothing in the

---

[5] The Court assumes that Shantel's contention that the manner of death was clearly accidental is based on the opinions of George Schiro and Dr. Sandomirsky.

discovery that Shantel seeks from MetLife about its claims practices, generally or specific to this case, is material to the outcome of MetLife's motion for summary judgment. Shantel cannot create an issue of fact as to anything material to the bad faith claims, her inability to create an issue of fact is not due to the lack of discovery, and MetLife's motion for summary judgment is not premature.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 126)** filed by Metropolitan Life Insurance Co. is **GRANTED**. The plaintiff's claims against MetLife for penalties, damages, and attorney's fees are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the **Motion to Continue and/or Dismiss MetLife's Motion for Partial Summary Judgment (Rec. Doc. 138)** filed by the plaintiff, Shantel Parria-Smith, is **DENIED**.

April 21, 2023

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE