UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHANTEL PARRIA-SMITH                                         CIVIL ACTION

VERSUS                                                       NO. 19-7844

PRIMERICA LIFE INSURANCE CO., ET AL.                         SECTION A (3)

## ORDER AND REASONS

The following motion is before the Court: **Motion for Partial Summary Judgment (Rec. Doc. 158)** filed by the plaintiff/counterclaim defendant/cross-claim defendant/third-party defendant, Shantel Parria-Smith. Cross-claimants Dominic Smith and Gabriel Smith oppose the motion. The motion, submitted for consideration on April 26, 2023, is before the Court on the briefs without oral argument.

**I.      Background**

This case involves two life insurance policies, one of which may be subject to a suicide exclusion, coverage for accidental death and dismemberment benefits, for which coverage may not apply if the decedent died by suicide, and competing claims by the primary and contingent beneficiaries.

On June 24, 2018, Mr. Troy Smith died by a gunshot wound to his head. The plaintiff herein, Ms. Shantel Parria-Smith ("Shantel"), the decedent's wife, filed this lawsuit seeking life insurance benefits from two separate policies covering her late husband. One policy was issued by Primerica Life Insurance Co. The other was issued by Metropolitan Life Insurance Co. ("MetLife"). MetLife had in place a group policy (with

a life insurance benefit) issued to Troy Smith's employer, the Jefferson Parish Sheriff's Office.

The Complaint mentions only life insurance and does not refer to benefits for accidental death and dismemberment. Troy Smith had coverage under the MetLife policy for accidental death and dismemberment ("ADD"), which if triggered would result in an additional $130,000.00 in proceeds. It is now clear that Shantel does seek to recover the ADD benefit from MetLife.

Competing claims for the life insurance proceeds have been made by not only Shantel but also by Troy Smith's sons, Dominic Smith and Gabriel Smith ("the Smiths"). Shantel is the primary beneficiary on the insurance policies but to date the death benefits have not been paid to her. The basis of the Smiths' claim to the life insurance proceeds is that Shantel participated in the intentional, unjustified killing of Troy Smith, and therefore she is disqualified from receiving those proceeds under Louisiana law.[1] (Rec. Doc. 78, Cross-claim ¶ 10).

The MetLife life insurance benefit is not subject to any exclusions so MetLife has no interest in the life insurance proceeds. The life insurance benefit will be paid to either Shantel as primary beneficiary (100%) or to the Smiths as contingent beneficiaries (50% / 50%) if Shantel is disqualified. On April 4, 2023, the Court entered an order pursuant to a consent motion to have MetLife deposit a total of $175,902.47 into the registry of the Court, that total comprising the life insurance benefit plus accrued interest. (Rec. Doc. 157, Order).

---

[1] The Smiths' cross-claim includes as an alternate basis for disqualification the allegation that Shantel subjected Troy Smith to undue influence when he designated her as his primary beneficiary. The Smiths have abandoned this alternate theory of disqualification, which they cannot prove.

The Primerica policy was still in its contestability period when Troy Smith died. But Primerica has now concluded its contestable claim investigation and determined that the policy was properly issued. (Rec. Doc. 131-1, Reply at 2). Unlike the MetLife policy, the Primerica policy's life insurance benefit is subject to a suicide exclusion. Primerica has not yet determined whether it will seek to deny coverage based on that exclusion.

American Funeral Financial, LLC has made claims against all parties for payment of Troy Smith's funeral expenses.

The shooting death of Troy Smith was investigated by the Jefferson Parish Sheriff's Office, Homicide Division. Shantel was arrested and ultimately charged with the second degree murder (a specific intent crime) of Troy Smith. Because of the pending state criminal charges and the potential that they would impede discovery in this case, the Court determined that the prudent course of action would be to stay this matter in its entirety pending the outcome of the state criminal case. (Rec. Doc. 53, Minute Entry 1/23/20). On January 23, 2020, the Court entered an order staying and closing this civil action pending the conclusion of the criminal case. (*Id.*).

The criminal trial lasted ten days with the State calling 32 witnesses. On August 26, 2022, a Jefferson Parish jury returned a verdict of Not Guilty. On September 16, 2022, the Court reopened this case. (Rec. Doc. 55, Order). Shantel's position is that this case is simple—whether Troy Smith died by murder, suicide, or accident—and that the uncontroverted scientific and expert evidence shows that the manner of death was accidental. The Court has already either addressed or denied as premature several motions.

A jury trial had been set for May 22, 2023. (Rec. Doc. 59, Scheduling Order). But on March 6, 2023, the Court granted (over Shantel's objection) a motion to amend certain scheduling order deadlines. (Rec. Doc. 137, Order and Reasons). Although the Court did not disturb the trial date the Court did express concerns that the trial date may no longer be viable. The Court attempted to schedule a status conference with counsel to discuss the viability of the trial date but scheduling a conflict-free date proved difficult. The Court therefore abandoned the effort to schedule a status conference until after the parties participated in a settlement conference with the magistrate judge. (Rec. Doc. 154, Order). That settlement conference took place on March 30, 2023, but the parties were unable to reach a settlement. (Rec. Doc. 155, Minute Entry).

On April 11, 2023, the Court entered an order cancelling the pretrial conference and scheduling a status conference in lieu of the jury trial. (Rec. Doc. 159, Order). The status conference will take place on May 25, 2023, in chambers.

Most recently, the Court addressed MetLife's motion for summary judgment pertaining to Shantel's claim for statutory damages, penalties, and attorney's fees, referred to colloquially as "bad faith" claims. The Court granted that motion, dismissing Shantel's bad faith claims against MetLife with prejudice. (Rec. Doc. 161, Order and Reasons). In granting MetLife's motion the Court rejected Shantel's argument that the motion for summary judgment was premature based on the status of discovery. The Court explained that under the circumstances of the case, *i.e.*, the initiation of criminal proceedings against Shantel almost immediately after Troy Smith's death, and the Smiths' competing claim to the life insurance proceeds, additional discovery would not

help Shantel to create an issue of fact as to anything material to the bad faith claims against MetLife. (*Id.* at 11-12).

The instant motion pertains to the Smiths' cross-claim (Rec. Doc. 78) against Shantel seeking to have her disqualified as the primary beneficiary under the life policies. Shantel contends that the Smiths have had an adequate opportunity for discovery yet they have no evidence to establish their claim that Shantel intentionally killed Troy Smith, which is the allegation underlying their disqualification argument.[2]

The Smiths have filed their opposition, which relies solely on evidence presented by the State in the criminal trial. The Smiths' reasoning is that just because the State failed to convince a criminal jury of Shantel's guilt beyond a reasonable doubt, this does not mean that the same evidence cannot establish that Shantel intentionally killed Troy Smith based on the lesser preponderance of the evidence standard applicable in civil cases like this one.

The parties' contentions are addressed below.

---

[2] Shantel's motion for summary judgment also seeks adjudication of claims that are not part of this lawsuit. The Smiths' cross-claim does *not* include any tort claims (survival and wrongful death) or contribution/indemnity claims against Shantel, which Shantel actually acknowledges in her Memorandum in Support. (Rec. Doc. 158-1 at 10). Those claims are most likely prescribed (as Shantel contends) and if ever raised by the Smiths outside of this litigation would surely be problematic from a res judicata standpoint, but the Court cannot adjudicate or dismiss with prejudice a claim that is not part of this lawsuit.

On another note, Shantel has wisely narrowed the scope of the instant motion (when compared to her prior premature motion for summary judgment against the Smiths) to target only the Smiths' claims against her, which are grounded solely on the contention that Shantel intentionally shot and killed Troy Smith. Therefore, the issue of accident versus suicide—an issue important to both insurers—is not implicated in this motion because it is not material to what the Smiths must prove to challenge Shantel's status as primary beneficiary. Neither insurer has weighed in on the instant motion because their remaining coverage disputes with Shantel are based on the accident versus suicide issue.

## II.     Discussion

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)). When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).

Under the Rule 56 summary judgment analysis, if the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may

satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *Standard Ins.*, 2018 WL 746391, at *2 *(*citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Id.*

Importantly, the nonmovant must come forward with *competent* evidence, such as affidavits or depositions, to buttress his claims. *Metro. Life Ins.*, 2015 WL 5165556, at *2. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. *Id.* (citing *Martin v. John w. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. Pro. 56(c)(2)).

Section 901 of Louisiana's Insurance Code, Intentional Acts Exclusion, states in relevant part:

> No beneficiary, assignee, or other payee under any personal insurance contract shall receive from the insurer any benefits under the contract accruing upon the death, disablement, or injury of the individual insured when the beneficiary, assignee, or other payee is either:
>
> (a) Held by a final judgment of a court of competent jurisdiction to be criminally responsible for the death, disablement, or injury of the individual insured.
>
> ***(b) Judicially determined to have participated in the intentional, unjustified killing of the individual insured.***
>
> ***Where such a disqualification exists, the policy proceeds shall be payable to the secondary or contingent beneficiary***, unless similarly disqualified, or, if no secondary or contingent beneficiary exists, to the estate of the insured.

La. R.S. § 22:901(D)(1)(a)-(b), (2) (emphasis added).

This "Slayer Rule" is intended to prevent someone who kills the insured from financially benefiting from his death. *Pruco Life Ins. Co. v. Breen*, 289 F. Supp. 3d 777, 789 (E.D. La. 2017), *affirmed*, 734 Fed. Appx. 302 (5th Cir. 2018) (unpublished). Although "conviction triggers forfeiture," *Metro. Life Ins. Co. v. Scott*, No. 15-362, 2015 WL 5165556, at *1 (E.D. La. Sept. 2, 2015), the statute does not require that a beneficiary be convicted of the intentional homicide of the insured before she is disqualified from collecting the policy proceeds. *California-W. States Life Ins. Co. v. Sanford*, 515 F. Supp. 524, 533 (E.D. La. 1981). The statute likewise does not make acquittal conclusive on the issue of guilt. *Id.* The burden of proof is on the party seeking to disqualify the beneficiary named in the insurance contract. *Standard Ins. Co. v. Dillon*, No. 17-4530, 2018 WL 746391, at *2 (E.D. La. Feb. 7, 2018) (citing *Pruco Life Ins. v. Breen*, 2017 WL 4477769, at *18 (E.D. La. June 9, 2017)).

If Shantel had been convicted of Troy Smith's murder then the Smiths' attainment of the life insurance proceeds would have been essentially effortless, with the District Attorney doing all of the work and incurring all of the expense in proving the necessary facts for disqualification under § 901(D)(1) of the Insurance Code.[3] But Shantel was acquitted of murder, and while acquittal does not preclude disqualification under § 901(D)(1)(b), proving disqualification is far from being effortless or inexpensive, and that burden now falls completely and solely on the Smiths. It would seem a rather daunting

---

[3] If Shantel had been convicted of murdering Troy Smith, then presumably Primerica would have conceded the issue of suicide, and the life insurance benefits under both the MetLife and Primerica policies would have devolved to the Smiths as contingent beneficiaries. The issue of accidental death coverage under the MetLife policy would have been moot. Of course, the ADD coverage would never inure to the benefit of the Smiths because disqualification of Shantel as primary beneficiary, whether by criminal conviction or otherwise, requires an intentional act, *i.e.*, not accidental death.

and expensive task for the Smiths when one considers that the District Attorney failed to obtain a conviction after dedicating the resources necessary to investigate, prosecute, and try a murder case, the trial of which lasted ten days with the State calling 32 witnesses, many of whom were forensic experts, involving thousands of pages of discovery. The Court has previously observed that "[w]hether the Smiths or any other party can prove by a preponderance of evidence what the State failed to prove in a two-week trial is certainly questionable."[4] (Rec. Doc. 137, Order and Reasons at 6).

Moreover, the Smiths' burden of proof is neither reduced nor shifted in any measure to Shantel just because the District Attorney elected to pursue a criminal case against her. Troy Smith named Shantel as his primary beneficiary on the insurance policies and Shantel does not have to prove that she was actually innocent in the death of Troy Smith in order to retain her status as primary beneficiary. *See Pruco Life*, 289 F. Supp. 3d at 798.

In that vein, the Court is persuaded that Shantel has satisfied her burden as the summary judgment movant on a dispositive issue for which the Smiths bear the full burden of proof in this case, *i.e.*, the allegation that Shantel killed Troy Smith. The Smiths complain that Shantel's motion simply repeats that the Smiths have no evidence of a homicide, without being specific about the lack of evidence. (Rec. Doc. 160, Opposition at 15). This contention fails to recognize that the burden of proof as to disqualification is the Smiths' and not Shantel's. Shantel has thrown down the Rule 56

---

[4] Interestingly, in 2018, when handling a disqualification case under § 901(D)(1)(b), Judge Barbier observed that he could not locate a single case where a beneficiary had been disqualified under La. R.S. § 22:901(D)(1) in the absence of a criminal conviction. *Standard Ins.*, 2018 WL 746391, at * 3.

evidentiary gauntlet challenging the Smiths to either come forward with evidence that Shantel intentionally killed Troy Smith or get out of this case albeit involuntarily. The question today is not whether the Smiths win their case on the merits but rather whether they have enough admissible evidence to even get their case to trial.[5]

What is now clear is that the Smiths have no evidence of their own to produce in opposition to Shantel's motion for summary judgment, and it would appear from their opposition that they do not intend to obtain any. Instead, the Smiths have obtained the District Attorney's file and the voluminous record from the Jefferson Parish criminal case, the trial of which included testimony from both lay and expert witnesses, numerous in number. In support of their opposition the Smiths have foregone burdening the Court with the entirety of the District Attorney's file and the entire criminal record, instead offering what they consider the most probative excerpts of the record to demonstrate that summary judgment is not appropriate.[6] Since evidentiary objections

---

[5] The Court pauses here to raise another issue not mentioned by any party. The distinction between nonjury and jury cases for purposes of summary judgment cannot be ignored. In a nonjury case where the judge will sit as the finder of fact on all claims, and therefore will be tasked with resolving any factual disputes, the district judge has greater discretion to grant summary judgment. *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019). The district judge may "decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)).

This case has been scheduled for a jury trial yet the Court has not been able to locate a jury demand in the record by any party. But because the Smiths have assumed that the case would be tried to a jury, the Court has conducted the summary judgment analysis as if this were a jury case.

[6] It would have been ill-advised for the Smiths to have foisted the entirety of the criminal case file and record on the Court in opposition to Shantel's motion. The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

were sure to follow (Shantel's Reply did not disappoint in this respect), the Smiths have tried to persuade the Court as to the admissibility of their evidence. And again, underlying the Smiths' litigation strategy is the notion that this same evidence, when weighed under the preponderance of the evidence standard, will suffice to prove that Shantel intentionally killed Troy Smith.

First of all, the admissibility problems with the Smiths' "evidence" are far broader than just the fact that the exhibits themselves are hearsay and would never be admitted at trial in this civil case.[7] Even assuming that William Roniger (Exhibit C), Vickie Lemoine (Exhibit F1), Todd Morrell (Exhibit G), and Christopher Henly (Exhibit H), were called by the Smiths to testify in this case, those persons have no evidence to offer—<u>none</u>—regarding what took place in the bedroom when Troy Smith sustained the gunshot wound. Donald Meunier, the affiant on the warrant application (Exhibit A), has no first-hand personal knowledge about any of the facts of the case. Matthew Veazey, one of the responding deputies (Exhibit B), knows only what he learned from Shantel. There were only two persons in the house when Troy Smith was shot—Troy Smith and Shantel. Yet remarkably, Shantel's deposition testimony in this matter is not included as

---

[7] To be clear, every one of the opposition exhibits, including the reports of the State's experts, is hearsay and would not be admitted in any civil trial held in this Court. Some of the hearsay exhibits contain double and triple hearsay within them. As to the transcripts, it is the Court's understanding that some of them derive from a suppression hearing where the hearsay rules do not even apply. *See State v. Shirley*, 10 So. 3d 224, 228 (La. 2009); *State v. Turner*, 13 So. 3d 695, 703-704 (La. App. 5th Cir. 2009). The Lemoine transcript derives from an interview with law enforcement that took place prior to the indictment. Nothing contained in that statement is probative of any issue in this case. Lemoine, a neighbor, stated that immediately following the shooting, Shantel, in apparent Macbeth-like fashion, claimed to be covered in blood when she actually had no blood on her. Lemoine surmised that Shantel must have changed out of her clothes. But apparently there was no evidence that Shantel changed her clothes or delayed calling for help after the shooting so that she could change clothes.

part of the Smiths' opposition, presumably because it was not helpful to the Smiths. Simply, none of the lay witnesses other than Shantel has any personal knowledge that would render them competent witnesses insofar as what happened in the bedroom when Troy Smith was shot. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Second, the lay witnesses' testimony does not amount to much even from a circumstantial standpoint. The Court is aware that much was made of the so-called "inconsistent" versions of events that Shantel told different people about the events immediately surrounding the shooting. This helped fuel the criminal charges against Shantel but apparently it left the criminal jury unmoved, perhaps because they attributed it to how someone might have been affected by the trauma of the shooting, whether by accident or suicide. The jury could have reasonably concluded that the points of inconsistency did not necessarily suggest that Shantel actually shot Troy Smith. The Smiths' belief that Shantel comes to this civil case with her credibility already in question is erroneous.

Next, Exhibits D, E, and F to the opposition are expert reports pulled from the State's case. These experts are not fact witnesses so if they will testify in this matter then they must produce a written report that conforms to the requirements of Federal Rule of Civil Procedure 26(a)(2). None of the reports that the Smiths took from the State record conform to the requirements of the Federal Rules. Aside from that, none of them specifically opine that Shantel intentionally shot Troy Smith, much less explain how one might reach that conclusion based on the forensic evidence in this case. Even if the

reports could pass muster under the Federal Rules, this Court does not allow experts to testify beyond the four corners of the report.

And the importance of forensic expert testimony—which based on how much Shantel has told us her experts charge, does not come cheap—in this case cannot be gainsaid. There was no physical evidence that Shantel had handled the gun that killed Troy Smith much less fired it. There was no evidence that Shantel cleaned up or altered the bedroom before the authorities arrived or that she delayed in calling 911 immediately after the shooting.

This Court in no manner questions the District Attorney's decision to charge Shantel with second degree murder, but it is hardly a foregone conclusion that the criminal case would have succeeded but for the more onerous beyond a reasonable doubt standard that applied in the criminal trial. Admissibility problems aside, the Court remains unpersuaded that any portions of the State's evidence that the Smiths could permissibly have admitted in this civil case, are sufficient to prove that Shantel intentionally killed Troy Smith. The Court tends to agree with Shantel that the complete lack of objective evidence as to her guilt is likely why the Jefferson Parish jury unanimously acquitted her of murder. The problems that plagued the State's criminal case cannot be ameliorated by simply reducing the burden of proof.

Finally, on the first page of their opposition (Rec. Doc. 160) the Smiths' refer to the need for more discovery. This paragraph, which references Shantel's prior motion for summary judgment, appears to have been included in error, being leftover from the Smiths' prior opposition, which was based on the need for more discovery.

Nonetheless, the substance of the opposition does not support the need for additional discovery at this point.

In sum, the Smiths lack sufficient evidence to create a genuine issue of material fact to avoid summary judgment on whether Shantel intentionally killed Troy Smith. Shantel is entitled to judgment as a matter of law against the Smiths dismissing all of their claims in this matter with prejudice.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 158)** filed by Shantel Parria-Smith against Dominic Smith and Gabriel Smith is **GRANTED** dismissing all claims asserted by these parties (the Smiths) with prejudice.

May 2, 2023

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE